Catherine Anderson
Jason Solotaroff (PHV pending)
Giskan Solotaroff & Anderson LLP
90 Broad Street
New York, New York 10004
212 847-8315
*Counsel for Plaintiff and the Putative Class*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILDRED DUZANSON-BAPTISTE, individually and on behalf of all others similarly situated, | CLASS ACTION **COMPLAINT** |
| Plaintiff, | |
| -vs- | Jury Trial Demanded |
| BANK OF AMERICA CORPORATION, | |
| Defendant. | |

### INTRODUCTION

1. Plaintiff Mildred Duzanson-Baptiste ("Ms. Baptiste" or "Plaintiff"), individually and on behalf of all other similarly situated persons, files this Class Action Complaint against Bank of America Corporation ("Bank of America" or "Defendant"), alleging claims for breach of contract, negligent misrepresentation and promissory estoppel.

2. The claims are brought in connection with Bank of America's recruitment and hiring of Ms. Baptiste and other similarly situated high performing Financial Solutions Advisors who worked at Bank of America's Merrill Lynch subsidiary ("FSAs") for new positions as Merrill Financial Solutions Advisors ("MFSAs").

3. In late 2021 and continuing in 2022, Bank of America represented to Ms. Baptiste and other FSAs it recruited for the MFSA - Advisor Development Program (MFSA-ADP) that as MFSAs, they would be able to continue to work with their existing client base they had developed as FSAs and continue to earn the incentive compensation those clients generated while in the 18-month MFSA-ADP training program. In addition, Bank of America represented to Ms. Baptiste and the other recruited FSAs that while they were in the MFSA-ADP program, they would have the opportunity to move their best suited existing clients who met the requirements on to the Merrill Lynch Wealth Management advisory platform and keep those clients permanently upon graduation.

4. These promises were extremely important to Ms. Baptiste and the other recruited FSAs. Both in the FSA and MFSA-ADP position, Ms. Baptiste and the other FSAs earned modest salaries and received at least half of their income based on incentive compensation. Ms. Baptiste, as an example, had a client base as an FSA that generated approximately $90,000 in annual incentive compensation. Continuing to service that client base while Ms. Baptiste transitioned into the MFSA position meant that she would continue to earn the income she had earned in the past while she built the business necessary to earn equivalent or greater compensation as an MFSA.

5. Based on the representations regarding their existing client base, in 2022 Ms. Baptiste and at least 100 other MFSAs resigned from their positions as FSAs and accepted positions as MFSAs. The proposed class consists of these individuals ("the Class").

6. On December 5, 2022, Bank of America informed Ms. Baptiste and the members of the Class that MFSAs would, in fact, not be permitted to keep their former clients during the training period. Those clients would instead be assigned to FSAs, effective January 1, 2023. At

this point, Ms. Baptiste and the other MFSAs could not return to their former FSA positions because they had been filled.

7. As a result, Ms. Baptiste's client base, and the client bases of the other members of the Class, were taken away on January 1, 2023. With no way to readily make up the lost income, Ms. Baptiste resigned from her position as a MFSA on March 1, 2023. Although Ms. Baptiste was quickly hired by another financial institution, she will have to rebuild her client base from scratch at the new firm.

## THE PARTIES

8. Plaintiff Mildred Duzanson-Baptiste is domiciled in Hillsborough, New Jersey.

9. Defendant Bank of America Corporation is a corporation organized under the laws of Delaware with its principal place of business in Charlotte, North Carolina.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) in that this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are more than 100 class members nationwide; and at least one member of the putative class is a citizen of a different state than Defendant.

11. This Court has personal jurisdiction over the parties because Defendant conducts substantial business in this state, has systematic and continuous contacts with this state, has agents and representatives that can be found in this state and employed Ms. Baptiste in this state.

12. Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District in that Ms. Baptiste and other members of the class were employed in New Jersey and the representations were made to them here.

## FACTUAL ALLEGATIONS

13. Ms. Baptiste began working at Bank of America's Merrill Lynch subsidiary in 2014, where she obtained her financial advisory licenses and training. In 2016, she became a FSA assigned to the bank's branch in Branchburg, New Jersey and two years later was promoted to work in the area's largest bank branch in Flemington, New Jersey. Ms. Baptiste had previously worked as a loan officer at Bank of America and at other financial institutions.

14. Ms. Baptiste was an extremely strong performer. She built a client base of over 115 individuals and families, 225 accounts with a collective $28.9 million of assets under management as of the period she was targeted for the MFSA program.

15. As an FSA, Ms. Baptiste received approximately $90,000 in incentive compensation in 2022 based on her assets under management along with a salary of approximately $84,000.

16. In January 2022, Ms. Baptiste was ranked the third highest performing FSA in her region out of over 100 FSAs.

17. In late 2021, Ms. Baptiste's manager, Jennifer Cartagena suggested that she should apply for the newly created position of MFSA. Ms. Cartagena told Ms. Baptiste that the hiring managers were targeting highly successful FSAs for the MFSA role and presented this new opportunity as a career advancement opportunity towards becoming a Merrill Lynch Wealth Management Financial Advisor.

18. Ms. Baptiste later spoke to other Bank of America and Merrill Lynch Wealth Management executives who encouraged her to apply for the MFSA-ADP program. These included Brian Tiger, who she spoke to on February 9, 2022; Robert Beylickjian, who she spoke to on February 10, 2022; and Matthew Villanni, who she spoke to on April 21, 2022. In each of

these conversations, Ms. Baptiste was told that the policies of the MFSA-ADP program provided that:

- FSAs would be able to retain the clients they developed in the FSA role while in the 12 to 18 months MFSA-ADP training program.

- FSAs in the MFSA-ADP training program would continue to be entitled to financial opportunities derived from deepening their existing client relationships and receive incentive compensation for any new or existing business from these clients.

- If an existing client of an FSA in the MFSA-ADP training program demonstrated they would benefit from a wider range of investment solutions offered through Merrill Lynch Wealth Management, the MFSA would have the opportunity to move this client over to the new wealth management platform and the client would become part of the MFSA's new client base after graduating from the MFSA-ADP training program.

- Only after completing the MFSA-ADP training program would the FSA's clients who were not eligible to be transferred to the new wealth management platform would be redistributed back to a pool of FSAs.

19. In addition, from February until May 2022, Ms. Baptiste spoke to other FSAs who were already in the MFSA-ADP program, including Nas Allan, Jordan Smith, Sarif LaTorre Euscatigue, Brandon Murray, and Christopher Saba. Each of these individuals confirmed for Ms. Baptiste that they had been informed of the same policies of the MFSA-ADP program concerning retention of existing clients throughout the training program referenced above.

20. Neither Ms. Baptiste nor any other successful FSA would have entered the MFSA-ADP training program without these assurances. Since a large portion of successful FSA's compensation came from incentive compensation and both the FSA salary and the MFSA salary of $87,000 constituted less than half of their total compensation, entering the MFSA-ADP training program without their existing business would result in a significant loss of compensation for the duration of the 18-month training program.

21. On July 12, 2022, based on these representations, Ms. Baptiste applied for the MFSA-ADP program.

22. On July 22, 2022, Ms. Baptiste was accepted into the MFSA-ADP training program.

23. On August 22, 2022, Ms. Baptiste left the FSA position and entered the MFSA-ADP training program.

24. Thereafter, Ms. Baptiste participated in the training program while continuing to service her existing clients. Ms. Baptiste received strong evaluations for her performance in the training program.

25. On December 5, 2022, the supervisors of the MFSA-ADP program informed Ms. Baptiste and the other MFSAs, including members of the class, that contrary to the prior representations, the existing clients of the members of the class would be transferred to FSAs effective January 1, 2023.

26. As a result of the change, Ms. Baptiste lost at least $90,000 in incentive compensation she expected to earn in 2023. In addition, she lost six hard working years that went into growing relationships with clients, and she created the foundation for her financial advisory profession that she had anticipated would have served her professionally and financially for many more years until retirement.

27. Although Ms. Baptiste requested to return to her former FSA position, she was informed that there were no FSA positions available in her geographical area.

28. On information and belief, other Class members lost significant amounts as a result of the change. Since only successful FSAs were recruited for the MFSA position, each of

the FSAs who transferred to the MFSA role were deprived of the incentive compensation comparable to that of Ms. Baptiste.

29. Ms. Baptiste could not afford to live on the MFSA salary without the incentive compensation she had expected to receive. With no other alternative, on March 1, 2023, Ms. Baptiste was forced to resign from the MFSA position and accepted a position with another financial services firm where she will attempt to rebuild her client base.

## CLASS ACTION ALLEGATIONS

30. Plaintiff sues on her own behalf and on behalf of the Class, pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), defined as all current and former MFSAs employed by Bank of America who were formerly applied as FSAs.

31. The Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, based on the fact that over 1000 MFSAs were hired prior to December 5, 2022, and many were hired from the existing ranks of FSAs, it is believed that there are at least 100 members of the Class. These similarly situated employees are known to Bank of America, are readily identifiable, and can be located through its records.

32. There are questions of law and fact common to the members of the Class that predominate over any questions solely affecting its individual members.

33. The common questions include:

a. Did Bank of America enter into an agreement with the members of the Class that the members of the Class would retain their existing clients while they participated in the MFSA training program.

b. Did Bank of America breach this agreement.

  c. Did Bank of America owe the Class a duty to provide them with accurate information.

  d. Did Bank of America represent to the Class that they would be able to retain their existing clients while they participated in the MFSA training program.

  e. Did Bank of America reasonably expect that this representation would induce the Class to accept MFSA positions.

  f. Did Bank of America act negligently in making that representation.

  g. Did the Class reasonably rely on the representation.

  h. Is enforcement of the representation necessary to avoid injustice.

  i. The measure of damages.

34. Ms. Baptiste's claims are typical of the claims of the members of the Class.

35. Ms. Baptiste has the same interests in this matter as all other members of the Class.

36. Ms. Baptiste is an adequate class representative, is committed to pursuing this action and has retained competent counsel experienced in employment and class action litigation.

37. Class certification of Ms. Baptiste's claims are also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of the litigation.

38. Plaintiff knows of no difficulty that would be encountered in the management of this ligation that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

39. Plaintiff, on behalf of herself and the Class, repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if they were set forth herein at length.

40. Defendant agreed with Plaintiff and the members of the Class that if they accepted positions as MFSAs they would retain their existing clients, earn the incentive compensation generated by those clients throughout their participation in the MFSA training program, and have the opportunity to permanently retain clients who met the MFSA requirements.

41. Plaintiff and the members of the Class performed their obligations under this agreement by accepting employment as MFSAs.

42. Defendant breached the agreement by transferring the existing clients of Plaintiff and the members of the Class to FSAs while Plaintiff and the members of the Class were participants in the MFSA training program.

43. Plaintiff and members of the class incurred damages in the form of the lost incentive compensation attributable to the existing clients that were reassigned.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

44. Plaintiff, on behalf of herself and the Class, repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if they were set forth herein at length.

45. Defendant made false representations to Plaintiff and the Class concerning the retention of their existing client base while they were in the MFSA training program.

46. Defendant made these representations to induce Plaintiff and the Class to resign their FSA positions and accept employment as MFSAs.

47. Plaintiff and the Class justifiably relied on these representations in resigning from their FSA positions and accepting employment as MFSAs.

48. Plaintiff and the Class suffered damages in the form of lost incentive compensation from their existing clients during their tenure in the MFSA training program and/or damages arising from their forced separation from employment with Defendant.

## THIRD CAUSE OF ACTION
### (Promissory Estoppel)

49. Plaintiff, on behalf of herself and the Class, repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if they were set forth herein at length.

50. Defendant promised Plaintiff and the Class that they would be permitted to keep their existing clients during their participation in the MFSA training program.

51. Defendant expected Plaintiff and the Class to accept employment as a MFSA based on that promise.

52. Plaintiff and the Class reasonably relied on that promise in accepting employment as a MFSA.

53. Plaintiff and the Class suffered damages as a result of their reliance on Defendant's promise.

54. Enforcement of the promise is necessary to prevent injustice to Plaintiff and the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class are entitled to and pray for the following relief:

a) Certification of this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), and the appointment of Plaintiff and her counsel to represent the members of the Class;

  b)  An award of damages to Plaintiff and the Class;

  d)  An award of prejudgment and post-judgment interest;

  e)  An award of costs and expenses of this action together with reasonable attorneys' fees; and

  f)  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify under penalty of perjury under the laws of the United States of America that to the best of my knowledge, this matter is not the subject to any other action pending in any court, or of any pending arbitration or administrative proceeding. I understand that if the foregoing statement is willfully false, I am subject to punishment.

Dated: May 2, 2023

            s/ Catherine E. Anderson
            Catherine E. Anderson, Esq.
            Jason L. Solotaroff (PHV pending)
            **GISKAN SOLOTAROFF & ANDERSON LLP**
            90 Broad Street, 2nd Floor
            New York, NY 10004
            Tel: (212) 847-8315
            Fax: (646) 964-9620
            canderson@gslawny.com

            *Attorneys for Plaintiff and the Class*