**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILDRED DUZANSON-BAPTISTE, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>                      v.<br><br>BANK OF AMERICA CORPORATION,<br><br>                      Defendant. | Civil No. 23-2417 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

      This matter comes before the Court upon Defendant Bank of America Corporation's ("Defendant") Motion to Compel Arbitration, Stay Proceedings, and Strike and/or Dismiss Class Allegations regarding Plaintiff Mildred Duzanson-Baptiste's ("Plaintiff") putative Class Action Complaint, filed individually and on behalf of all other similarly situated persons (ECF No. 1). (ECF No. 10.) Plaintiff opposed the Motion (ECF No. 13), and Defendant replied (ECF No. 20). The Court has considered the parties' written submissions and decides the Motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is denied.

## I.     **BACKGROUND**[1]

Plaintiff is an individual who worked at Defendant's subsidiary,[2] Merrill Lynch, as a Financial Solutions Advisor ("FSA"). (Compl. ¶¶ 2, 8, ECF No. 1.) Plaintiff began working at Merrill Lynch in 2014 and became an FSA in 2016. (*Id.* ¶ 13.) As an FSA, Plaintiff built a strong and successful client base of "over 115 individuals and families, [as well as] 225 accounts with a collective $28.9 million of assets under management" by around late 2021. (*Id.* ¶¶ 14, 16.) Through her FSA position, Plaintiff received approximately $90,000 in incentive compensation in 2022 based on her assets under management and earned a salary of approximately $84,000. (*Id.* ¶ 15.)

In late 2021, Plaintiff's manager suggested that she apply to become a Merrill Financial Solutions Advisor ("MFSA"), a newly created position, by applying to partake in the MFSA-Advisor Development Program ("MFSA-ADP"), a 12-to-18-month training program for the position. (*Id.* ¶¶ 2, 17, 18.) From late 2021 until the spring of 2022, Plaintiff spoke with various executives of Defendant and of Merrill Lynch, through which she was encouraged to apply to the MFSA-ADP. (*Id.* ¶ 18.) Importantly, Plaintiff asserts that during each of the conversations, she was told that the policies of the MFSA-ADP would allow FSAs to: (1) retain the clients' FSAs developed in the FSA role while partaking in the MFSA-ADP; (2) "continue to be entitled to financial opportunities . . . from . . . [the FSA's] existing client relationships and receive incentive compensation for any new or existing business from these clients"; and (3) transfer existing FSA clients to the new MFSA wealth-management platform if beneficial to the FSA client. (*Id.*) Additionally, Plaintiff was told that "[o]nly after completing . . . the MFSA-ADP . . . would the

---

[1] Defendant states that for purposes of the instant Motion, Defendant assumes the truth of the Complaint's factual allegations. (Def.'s Moving Br. 5, ECF No. 10.) The Court, accordingly, does the same.

[2] Defendant caveats that it has "never employed Plaintiff or any of the purported class members, and reserves all rights and defenses thereto." (Def.'s Moving Br. 1.)

[former] FSA's clients who [are] not eligible to be transferred to the new wealth-management platform . . . be redistributed back to a pool of FSAs." (*Id.*) Plaintiff states that other FSAs already in the MFSA-ADP confirmed that they were informed of the same policies regarding retention of existing clients throughout the MFSA-ADP. (*Id.* ¶ 19.)

Based on the above representations, Plaintiff applied to the MFSA-ADP and was accepted in July 2022.[3] (*Id.* ¶¶ 21-22.) On August 22, 2022, Plaintiff left the FSA position and entered the MFSA-ADP while continuing to service her existing clients. (*Id.* ¶ 23-24.) On December 5, 2022, however, supervisors of the MFSA-ADP informed potential MFSAs, including Plaintiff, that their existing clients from their FSA role would be transferred to other FSAs, effective January 1, 2023. (*Id.* ¶ 25.)

Plaintiff alleges that, as a consequence, Plaintiff lost at least $90,000 in incentive compensation which she expected to earn in 2023, as well as her existing clientele that she built for six years. (*Id.* ¶ 26.) Although Plaintiff requested that she return to her former FSA position, Plaintiff was informed that there were no FSA positions available in her geographical area. (*Id.* ¶ 27.) Plaintiff asserts that she was forced to resign from the MFSA position and accept a different position with another financial services firm because of the compensation change. (*Id.* ¶ 29.)

Plaintiff asserts, based upon information and belief, that other class members also lost significant amounts of compensation due to the December 5, 2022 decision. (*Id.* ¶ 28.) Accordingly, Plaintiff brings forth her claims individually and on behalf of other similarly situated

---

[3] Plaintiff alleges that she and other FSAs would not have applied to and entered the MFSA-ADP if not for the above policies and assurances. (*Id.* ¶ 20.) Plaintiff explains that the MFSA salary of $87,000 constitutes less than half the total compensation an FSA would receive from their previous FSA salary and incentive compensation; accordingly, Plaintiff asserts that entering the 12-to-18-month MFSA-ADP without the existing business is a "significant loss of compensation." (*Id.*)

3

MFSAs who were previously FSAs and relied on the same alleged representations. (*Id.* ¶ 2.) Plaintiff seeks class certification pursuant to Rule 23, but has yet to move for class certification. (*Id.* ¶¶ 30, 37.)

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Class Allegations

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

### B.   Motion to Compel Arbitration

"It is well established that the Federal Arbitration Act ("FAA"), reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey &*

*Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis*, 560 F.3d at 160).

When deciding a motion to compel arbitration, a court must first determine the applicable standard of review. The Third Circuit has instructed that:

> When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resol, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (alteration in original) (internal quotation marks and citation omitted).

### III. **DISCUSSION**

Plaintiff, individually and on behalf of all other similarly situated persons, filed a putative Class Action Complaint against Defendant, alleging claims for: (1) breach of contract; (2) negligent misrepresentation; and (3) promissory estoppel. (Compl. ¶ 1.) Defendant moves to compel arbitration, stay proceedings, and strike and/or dismiss class allegations. (*See generally* Def.'s Moving Br.) Specifically, "Defendant requests that the Court strike Plaintiff's class

5

allegations under Rule 23(d)(1) or dismiss Plaintiff's class allegations under Rule 12[.]" (Def.'s Moving Br. 1 n.1, 12-38.) The Court first considers Defendant's motion regarding Plaintiff's class allegations.

### C.     Class Allegations

Plaintiff brings forth class action allegations pursuant to Rules 23(a), (b)(2), and (b)(3). (Compl. ¶ 30.) Although Plaintiff has yet to move for class certification, Defendant contends that the class allegations must be stricken or dismissed because, based on Plaintiff's Complaint, common questions of fact or law do not exist or will not predominate over questions affecting individual class members, pursuant to Rule 23(a)(2) and (3). (Def.'s Moving Br. 1 n.1, 12-38.) Defendant argues that such concerns cannot be resolved even with discovery. (*Id.*) Plaintiff counters that Defendant's "motions are premature and disfavored because until Plaintiff has the opportunity to take class discovery and move for class certification, the appropriateness of class treatment and the parameters thereof cannot be determined." (Pl.'s Opp'n Br. 2, ECF No. 13.)

Indeed, courts in this district have held that "dismissal of class allegations at [the pleading] stage should be done rarely and that the better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery." *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d 679, 752 (D.N.J. 2021) (quoting *Horowitz v. AT&T Inc.*, No. 17-4827, 2018 WL 1942525, at *17 (D.N.J. Apr. 25, 2018), *opinion clarified on denial of reconsideration*, No. 17-4827, 2019 WL 77306 (D.N.J. Jan. 2, 2019)). This is because dismissal in the early stages of litigation does not allow a plaintiff to fully develop their class claims through discovery, and thus "the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'" *Matson v. SCO, Silver Care Operations, LLC*, No. 12-1918, 2018 WL 1027448, at *2 (D.N.J. 2018); *see also*

*McPeak v. S-L Distrib. Co.*, No. 12-348, 2014 WL 4388562, at *7 (D.N.J. Sept. 5, 2014) ("[C]lass allegations have been dismissed or stricken when it is clear from the face of the complaint that the requirements for maintaining a class action cannot be met." (citations omitted)). Moreover, to evaluate whether a plaintiff has satisfied his or her burden to demonstrate that the requirements of Rule 23 are met, courts have often found it necessary to analyze the elements of the parties' substantive claims and review facts revealed through discovery. *Ehrhart v. Synthes (USA)*, No. 07-1237, 2007 WL 4591276, at *5 (D.N.J. Dec. 28, 2007) ("As a practical matter, the court's [certification decision] usually should be predicated on more information than the complaint itself affords . . . [and][t]hus, courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis." *Id.* (citing 5C Wright, Miller & Kane, Federal Practice & Procedure Civil 3d § 1785.3)).

In sum, "putative class plaintiffs are entitled to develop their claims (class or otherwise) through discovery." *Ehrhart v. Synthes (USA)*, No. 07-1237, 2007 WL 4591276, at *4 (D.N.J. Dec. 28, 2007). As this District's case law demonstrates, generally, "[t]he Court will not consider whether a proposed class meets the class requirements until after [a plaintiff] move[s] for class certification." *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013) ("Dismissal of class claims prior to discovery and a motion to certify the class by [a] plaintiff is the exception rather than the rule.").

Here, Plaintiff has yet to move for class certification and discovery has not yet taken place. Defendant's arguments hone in on the fact that individualized inquiries will need to be made for each putative class member. Yet, courts of this district have noted that "potential factual differences among individual [p]laintiffs, which could otherwise defeat class certification" will not

be considered when assessing class allegations because discovery may trump such concerns. *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d at 752.

Defendant also argues that a conflicts-of-law analysis is necessary as to each putative class member because Defendant employs MFSAs in at least 44 states and FAs in all 50 states. (Def.'s Moving Br. 16, 16 n.9.) Plaintiff brings forth claims individually and on behalf of those similarly situation (Compl. ¶ 1)—in such cases, "[t]he Court cannot meaningfully engage in a choice-of-law analysis when it is not even clear which other state laws would apply to unnamed plaintiff's claims." *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 WL 2566132, at *4 (D.N.J. June 6, 2014) ("Absent factual content that would allow this Court to determine which other state laws are being asserted in the alternative, the Court is in no position to engage in the type of choice[-]of[-]law analysis[.]"); *see also In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d at 757 ("[T]he variances of controlling state laws do not necessarily defeat predominance. Without discovery, the Court is unable to examine how these state laws will apply to the facts of [p]laintiffs[.]"). Moreover, as Plaintiff alleges, discovery may indicate that, pursuant to any contracts or offers signed by all putative class members, the claims in this matter may be governed by one state's laws. (Pl.'s Opp'n Br. 8-9.)

8

At this stage in the proceedings, the Court finds that Plaintiffs have pled sufficient facts to satisfy Rule 23(a) and Rule 23(b)(3)[4] and, as such, the Court will address Plaintiffs' class action certification on a motion for class certification made under Rule 23(c) after Plaintiffs are given an opportunity to conduct limited discovery on class action status. *See Ehrhart*, 2007 WL 4591276, at *4.

### D.   Compel Arbitration

Defendant asserts that Plaintiff must arbitrate her claims before the Financial Industry Regulatory Authority ("FINRA") pursuant to her Securities Industry Registrations ("Form U-4") and FINRA rules. (Def.'s Moving Br. 1, 9.) Defendant specifies that all financial advisors, including Plaintiff, are required to execute a Form U-4 to maintain their status as a registered advisor. (*Id.* at 9.) Plaintiff concedes that the only basis to compel arbitration here is Plaintiff's association as a FINRA-registered individual. (Pls.' Opp'n Br. 5-6.) Yet, Plaintiff argues that because "Plaintiff has brought a class action, the dispute is not arbitrable under FINRA's Code of Arbitration Procedure and the motion to compel should be denied." (*Id.* at 6.)

---

[4] The Court notes that "Rule 23(b)(2) class actions are 'limited to those class actions seeking primarily injunctive or corresponding declaratory relief.'" *Mladenov v. Wegmans Food Markets, Inc.*, 308 F.R.D. 127, 130-31 (D.N.J. 2015) (quoting *Barnes v. American Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998)); Advisory Committee Notes to the 1966 Amendments to Fed. R. Civ. P. 23 ("The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages."). Here, Plaintiff's prayer for relief consists of: (1) an award of damages; (2) an award of prejudgment and post-judgment interest; and (3) an award of costs and expenses of this action together with reasonable attorneys' fees. (Compl. ¶ 54(b)-(e).) Hence, Plaintiff's claims seem to be "predominately for money damages[,]" *Mladenov*, 308 F.R.D. 127, 130-31, despite the fact that "Rule 23(b)(2) applies only when a single, indivisible remedy would provide relief to each class member[,]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011); *see also Trunzo v. Citi Mortg.*, No. 11-1124, 2014 WL 1317577, at *6 (W.D. Pa. Mar. 31, 2014) ("[T]he Supreme Court has held that claims for monetary relief cannot be certified under Rule 23(b)(2) where 'the monetary relief is not incidental to injunctive or declaratory relief' and 'each class member would be entitled to an individualized award of monetary damages.'" (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011))).

Indeed, Rule 12204 of FINRA's Code of Arbitration Procedure states unequivocally "[c]lass action claims may not be arbitrated under the Code." *12204. Class Action Claims*, FINRA, https://www.finra.org/rules-guidance/rulebooks/finra-rules/12204; *Antczak v. TD Ameritrade Clearing, Inc.*, No. 17-4947, 2018 WL 2298494, at *8 (E.D. Pa. May 21, 2018) ("Class actions are exempted from FINRA arbitration." (citing FINRA Rule 12204)).

Here, the Court has found it premature to determine Defendant's arguments regarding Plaintiff's class allegations. Therefore, the Court also finds it premature to compel arbitration at this stage.[5] The Court will consider this issue after Plaintiffs have filed for class certification. Accordingly, the Court dismisses Defendant's Motion to Compel Arbitration and Stay Proceedings at this time.

### IV. <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Strike and/or Dismiss Class Allegations is denied. The Court will issue an Order consistent with this Memorandum Opinion.

 

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[5] Defendant cites an Eighth Circuit opinion to argue that issues of class allegations must not needlessly "delay a decision on a motion to strike class claims" or "force the parties to remain in court when they previously agreed to arbitrate." (Def.'s Reply Br. 2, ECF No. 20 (citing *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021).) As is well known, this Court is not bound by the decisions of other jurisdictions. *See Mohsen v. Gonzales*, No. 07-237, 2007 WL 2137933, at *2 (D.N.J. July 18, 2007) ("[A] decision of another circuit is not binding in this court. . . . A Third Circuit federal district court is bound only by the pronouncements of the Third Circuit Court of Appeals." (citing *UTI Corp. v. Fireman's Fund Ins. Co.*, 896 F. Supp. 362, 379 (D.N.J. 1995))).